# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cr-00197-TWP-DML |
| | ) | |
| MICHAEL KAIM, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER ON DEFENDANT'S MOTION FOR RECONSIDERATION AND TO CORRECT ERROR UNDER FED. R. CRIM. 35

This matter is before the Court on Defendant Michael Kaim's ("Kaim") Motion for Reconsideration and to Correct Error under Fed. R. Crim. 35 (Filing No. 29). For the reasons stated below, the Motion is **denied**.

## I. LEGAL STANDARD

Federal Rule of Criminal Procedure 35(a) provides a means for correcting clear error and allows a court to correct a sentence that resulted from arithmetical, technical, or other clear error. Sentence modification under Rule 35 is extremely limited. *U.S v. Townsend*, 762 F.3d 641, 645. (7th Cir. 2014). In the absence of a motion from the government, the court has authority to modify a sentence only if the sentence originally imposed "resulted from arithmetical, technical, or other clear error," and even then the court must act within 14 days after the sentence is orally announced. Fed. R. Crim. P. 35(a). *Id.*

## II. BACKGROUND

On September 18, 2018, Kaim entered a plea of guilty to Count 1 of the Information: Deprivation of Rights under Color of Law, in violation of 18 USC § 242, a Class A Misdemeanor. In exchange for his plea of guilty, the Government agreed to dismiss the Indictment docketed under

Case Number 1:18-cr-00012-TWP-DML[1] at the time of sentencing. ([Filing No. 6 at 1-2](Filing No. 6 at 1-2).) In addition, Kaim agreed to relinquish his future ability to be a police officer. The factual basis for the plea of guilty is the following:

> MS. CHANNAPATI: On the afternoon of April 18, 2017, the defendant, a police officer at the Veterans Affairs Medical Center in Indianapolis, Indiana, was patrolling the hospital with his partner, Officer D.W. Defendant encountered this victim, D.J., a patient employee of the hospital, cursed, and asked D.J. if he had a problem. D.J. responded by cursing loudly back at the defendant and Officer D.W. as D.J. walked away from both officers. The defendant followed D.J., telling him that he was being disruptive and that he had to leave the hospital immediately. D.J. initially argued with the defendant that, as a veteran and a patient, he had a right to be in the hospital. However, when the defendant repeated his orders for D.J. to leave, D.J. complied. Defendant walked D.J. down the lobby corridor towards the exit with Officer D.W. following behind them. When D.J. and the two officers reached the vestibule before the hospital exit, D.J. stated he needed to go to the clinic. Officer D.W. informed D.J. that the clinic was closed and he should return tomorrow. D.J. then returned and walked -- excuse me, D.J. then turned and walked towards the exit to leave the hospital. The defendant then placed both of his hands on D.J., shoved him out the exit door and pushed D.J. against an exterior wall of the building. The defendant then brought D.J. to the ground, causing D.J. to fall face down onto the sidewalk. The defendant dropped on top of D.J. and with the defendant's hands struck D.J. approximately six to seven times in the head. The defendant remained on top of D.J. while he placed D.J.'s right hand behind his back. The defendant and Officer D.W. put D.J. in handcuffs and placed him under arrest. The defendant filed an investigative report about this incident in which he wrote that D.J. did not comply with defendant's instructions to leave and that D.J. resisted arrest, thus depriving D.J. of a right secured to him by the Fourth Amendment of the constitution, to witness the right to be free from unreasonable seizure.
>
> THE COURT: And that was false; correct?
>
> MS. CHANNAPATI: Yes.

Kaim, under oath, indicated that the factual basis was true and accurate. He was advised that his plea was pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the Court explained that it was not a binding agreement, therefore, the ultimate determination of the sentence is left to

---

[1] A federal grand jury returned an Indictment in Case No. 1:18-cr-00012-TWP-DML charging Michael Kaim with Count 1: Civil Rights Violation, 18 U.S.C. §242 and Count 2: Obstructing Justice by Writing a False Report, 18 U.S.C. § 1519.

the Court's discretion. The Court, finding the plea was knowing and voluntary, accepted the plea of guilty and proceeded to sentencing on that same date. Other than correction of one typographical error, neither Kaim (nor his counsel) had any other changes or corrections to the Presentence Investigation Report ("PSR") prepared by the United States Probation Department. The PSR was accepted by the Court, under seal. The sentencing guideline range calculated by the Court was 12 to 18 months' imprisonment. However, the mandatory maximum sentence for the offense is 12 months; accordingly, the guideline sentence became 12 months' imprisonment. The Court gave the following statement of reasons for the sentence:

> The sentence that the Court is imposing is the guideline sentence. The Court has considered the 3553(a) factors, including the nature and circumstances of the offense, the defendant's lack of a criminal history, the defendant's characteristics, the need for the sentence to reflect the very seriousness of the offense, to promote respect for the law, to provide just punishment, and to provide adequate deterrence to criminal conduct of this nature by other law enforcement officers who might try to do similar things.
>
> Mr. Kaim is a 28-year-old man before the Court for illegally and unjustifiably assaulting a patient at the Veterans Affairs Medical Center here in Indianapolis by repeatedly hitting the victim about the head and face. The veteran apparently said he was there because he was in need of medical care, and veterans in that hospital should be treated with dignity and respect, and the one place where a disabled veteran should feel safe should be in the Veterans Administration Hospital.
>
> Great leniency has already been shown to this defendant because he was originally indicted by a Federal Grand Jury of felony civil rights violation and felony obstruction of justice, and the defendant originally faced a statutory sentence up to 10 years on the civil rights violation and up to 20 years on the obstruction of justice. The defendant has one of the best attorneys in these types of cases in the state of Indiana, and maybe in the whole country, who represented him, and he negotiated you a wonderful plea deal.
>
> You've now pled guilty to an information on a misdemeanor, deprivation of rights under color of law. The guideline sentence for this offense would have been 12 to 18 months, but because it is a misdemeanor, the maximum the Court can give you is the guideline sentence of 12 months.
>
> As to this defendant's characteristics, Mr. Kaim was born into a two-parent home. Unfortunately, his parents divorced when he was very young. He resided primarily

with his mother until he was 11 years old. Thereafter, he moved into his father's home. He reports that he had a good childhood. According to family and friends and the letters and their testimony today, the defendant is a loving and a devoted husband and father. He has in the past been a good and honorable person. He has no history of alcohol or illegal drug abuse.

The Court has considered that he's never been arrested, he's never had any past incidents that are known to this Court of any violence or danger to society, and this does appear to be his first foray into the criminal justice system. And based on this defendant's allocution, the Court accepts that he's sincerely remorseful and that he has suffered. He's lost his job, half of his income. He was let go by the United States Department of Veterans Affairs, he's damaged his reputation, he has agreed to forfeit his law enforcement certification and not to ever work in a law enforcement capacity.

The Court also recognizes the defendant's military background and his service to our country, which included a deployment to Afghanistan. The Court has also considered the defendant's past good work in law enforcement as detailed in the letters of support, and the Court has taken all of these factors into consideration. And, I'm certain that these were the factors that were taken into consideration when the plea agreement was negotiated and the defendant was allowed to plead to the misdemeanor rather than the felonies.

The Court, however, finds that there is a need for this sentence to reflect the very seriousness of the offense, to promote respect for the law. Our society cannot tolerate police brutality. If the defendant suffers from post-traumatic stress disorder or some other condition that affects his behavior, he certainly should not be a law enforcement officer. We cannot have law enforcement officers who, for whatever reason, snap and brutalize a citizen.

The nature and circumstances of the offense are very troubling. The victim was exiting the VA Hospital. The factual basis indicates that the defendant shoved him out the door, slammed the victim against the wall, caused his face -- him to fall face first onto the sidewalk. He struck him in the head with his fist six or seven times, causing him to suffer serious injury. Apparently the injury was very serious, because he was -- had a judgment of $300,000 that was paid by the Veterans Administration because of this incident. This was -- this was a beatdown. There's absolutely no excuse for this type of behavior against an innocent disabled veteran regardless of whether he cursed in the hospital. I'm sure that happens all of the time because you are servicing all types of people in the Veterans Administration Hospital. After beating the victim, the defendant placed him in handcuffs and falsely arrested him. These facts are just awful.

The Court considers as relevant conduct, and Mr. Kautzman has explained that this was from the defendant's perception, but the defendant's perception was wrong. The defendant wrote a statement for the investigation where he stated that the victim

resisted his efforts to escort him from the building, and now I hear today that there's video cameras that show that's not what happened. In truth, the victim was leaving the building. There was no reason to use any force against this person, and no reason to arrest him.

The Court considers the need for deterrence to be very great on this type of offense, so that other law enforcement officers who might try to do similar things know that the courts will not tolerate it when law enforcement officers commit crimes and use unjustified illegal and excessive force against the very people that they have sworn to protect. And it is particularly troubling that the victim in this case was a disabled veteran, a patient at the Veterans Administration Hospital.

For all of these reasons, the Court finds that there's no reason to vary below the guidelines, and that a sentence of 12 months' imprisonment followed by six months of supervised release is sufficient but not greater than necessary to address the defendant's conduct, reflect the seriousness of the offense, promote respect for the law, and provide adequate deterrence to other law enforcement officers who might be tempted to do similar things.

The Court correctly calculated the guideline sentence, evaluated the statutory factors for sentencing under 18 U.S.C. § 3553(a), relied on properly supported facts and sentenced Kaim to a guideline sentence of 12 months' imprisonment, followed by six months of supervised release. The Judgment of Conviction was docketed on September 20, 2018 ([Filing No. 24](#)). On October 2, 2018, Defendant filed the instant Motion for Reconsideration and to Correct Error ([Filing No. 29](#)), as well as a Notice of Appeal ([Filing No. 27](#)).

### III.  **DISCUSSION**

Dissatisfied with the sentence orally imposed on September 18, 2018 to which judgment was entered on September 20, 2018, Kaim filed a Rule 35(a) motion to correct errors. He alleges the Court erred by basing its sentence on mistaken information and factors not proven by a preponderance of the evidence. The Court disagrees and will discuss the alleged erroneous factors in turn:

A.  **The Court's finding that D.J. (the victim) suffered bodily injury or any form of a "beat down" is unsupported by the evidence presented at the Sentencing Hearing.**

The Court finds no error in making a reasonable inference that the victim suffered bodily injury based upon the nature of the beating. The factual basis, admitted by Kaim, is that

> D.J. then turned and walked towards the exit to leave the hospital. The defendant then placed both of his hands on D.J., shoved him out the exit door and pushed D.J. against an exterior wall of the building. The defendant then brought D.J. to the ground, causing D.J. to fall face down onto the sidewalk. The defendant dropped on top of D.J. and with the defendant's hands struck D.J. approximately six to seven times in the head. The defendant remained on top of D.J. while he placed D.J.'s right hand behind his back.

Merriam-Webster defines "beatdown" as: a "violent physical beating"[2]. The admitted factual basis clearly describes a violent, physical beating. The Court finds no error in using the term "beatdown" to describe Kaim's admitted actions and no error in making the reasonable inference that D.J. more likely than not, suffered bodily injury during the incident.

B.  **The assertion that D.J. was awarded by judgment the amount of $300,000.00 is also incorrect. In reality, D.J. received a different amount by way of civil settlement—not a judgment award. D.J. actually received $200,000.00 in settlement for a Federal Civil Torts Claim.**

During defense counsel's colloquy, he pointed out to the Court that "the government is not seeking restitution partly due to the fact that Mr. Jones has received a *civil judgment* that is tantamount to restitution through the Veterans Administration", to which the Court inquired, "how much?" Defendant's counsel was not aware of the amount, however, the Government attorney responded that the amount was $300,000.00. The Court accepts that the Government attorney recited an incorrect amount for the civil settlement and accepts that the actual amount received by the victim is $200,000.00. *See* Filing No. 29-4. The Court also accepts that defense counsel erred

---

[2] https://www.merriam-webster.com/dictionary/beatdown

in telling the Court that D.J. received a civil judgment as opposed to a civil settlement[3]. The Court agrees that a defendant must be sentenced on the basis of reliable information. However, it is the attorney's responsibility to report accurate information to the Court. *See U.S. v. Salutric*, 775 F. 3d 948, 952 (7th Cir. 2015) ("if, as Salutric now argues, Vassil's statement was inaccurate, it was Salutric's obligation to speak up."); *United States v. Williams–Ogletree,* 752 F.3d 658, 664 (7th Cir.2014) (defendant has obligation to make and support objection to any information in presentence report he believes to be inaccurate). In any event, regardless of whether there was civil judgment of $300,000.00 or a civil settlement of $200,000.00, this error is harmless. The Government's error in reporting the incorrect amount of the settlement and Kaim's error in referring to a judgment in no way would have altered the Court's sentencing decision. There was no clear error in the Court's consideration of this factor.

C. **The Court erred by its conclusion that the Defendant falsified a police report. Despite no evidence presented by the Government, there is no factual basis establishing that the Defendant intentionally falsified his police report.**

In his factual basis, Kaim admitted that he "filed an investigative report about this incident in which he wrote that D.J. did not comply with defendant's instructions to leave and that D.J. resisted arrest, thus depriving D.J. of a right secured to him by the Fourth Amendment of the Constitution, to wit: the right to be free from unreasonable seizure." (Filing No. 6 at 9.)

The Court did not conclude that Kaim intentionally falsified his police report. Instead, the Court properly considered as relevant conduct that Kaim

> wrote a statement for the investigation where he stated that the victim resisted his efforts to escort him from the building, and now I hear today that there's video cameras that show that's not what happened. In truth, the victim was leaving the building. There was no reason to use any force against this person, and no reason to arrest him.

---

[3] Kaim now contends that the PSR inaccurately states "D.J. will not be submitting a request for restitution because he received a judgment from the Veterans Administration as the result of a civil suit he filed against the agency."

7

Moreover, the Court specifically noted that Kaim acted based on his perception, "but the defendant's perception was wrong". The Court is allowed to consider relevant conduct to allow the sentence to reflect the seriousness of an offense rather than being limited by the specific charge set out in the indictment. *U.S.S.G. 1B1.3*. For that reason, in calculating a proper sentence, the Guidelines permit the court to consider certain conduct with which the defendant has not been charged. *U.S. v. Taylor* 272 F.3d 980 (7th Cir. 2001). There is no clear error in the manner in which the Court considered that Kaim filed an investigative report about this incident in which he inaccurately wrote that D.J. did not comply with his instructions to leave.

**D.** **The Court improperly remarked that Kaim's diagnosis of PTSD following his service in the military should have precluded the defendant from being put into a position where he could "snap."**

Kaim asserts that his post-traumatic stress disorder ("PTSD") should not have factored into the Court's sentencing determination. The PSR states that Kaim was diagnosed with PTSD by staff at the Roudebush V.A. Medical Center after he returned from his deployment in Afghanistan. During the sentencing hearing, defense counsel broached the topic of PTSD as he discussed Kaim's significant military service. Counsel stated "[t]o what degree that PTSD affects -- have affected things, once again, we're not sure, but he did serve with valor and distinction and got an honorable discharge…". Counsel also informed the Court that Kaim cleared the required psychological assessments prior to being hired as a police officer.

In its statement of reasons, the Court noted that "our society cannot tolerate police brutality" and reasoned "[i]f the defendant suffers from posttraumatic stress disorder or some other condition that affects his behavior, he certainly should not be a law enforcement officer. We cannot have law enforcement officers who, for whatever reason, snap[4] and brutalize a citizen." The Court

---

[4] Merriam-Webster defines the adjective "snap" as: "done, made, or carried through suddenly or without deliberation." https://www.merriam-webster.com/dictionary/snap.

8

clearly understood that Kaim's PTSD may or may not have contributed to his spur of the moment, and aberrant behavior. The Criminal Code makes clear, as did the Court during the Rule 11 colloquy, that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense, which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence," 18 U.S.C. § 3661. *See Salutric* at 952. The Sentencing Guidelines likewise provide that the court has broad authority to consider any information about a defendant unless specifically proscribed by law. *U.S.S.G. § 1B1.4. Id.* The Court did not improperly consider Kaim's PTSD diagnosis in its sentencing decision and Kaim did not receive a "harsher penalty" because of his PTSD; rather he received a guideline sentence based on several factors as explained by the Court. There was no Rule 35 clear error in the manner in which the Court considered this factor.

The sentence in this case was based on information provided in the PSR, letters, information provided by the attorneys and defendant during the hearing, and the testimony of witnesses. The Court properly analyzed the relevant sentencing factors, and imposition of the guideline sentence was reasonable. As required by 18 U.S.C. § 3553(c), the Court articulated that it had considered each of Kaim's arguments, and then stated a reasoned basis in exercising its professional judgment and legal decisionmaking authority. The record makes clear that the Court listened to each of Kaim's arguments for a downward departure or variance and considered the supporting evidence before finding those circumstances insufficient to warrant a sentence lower than the guideline sentence. *See Rita v. United States*, 551 U.S. 338, 339 (2007).

## IV. CONCLUSION

There was no clear error of law or fact in the Court's reasoning of the sentencing decision in this case. The Court did not err in considering the evidence before it, and the evidence considered satisfied the standards required for due process. Clarification regarding the inaccurate information presented by the parties to the Court does not change the Court's determination of the sentence. For the reasons stated above, Defendant's Motion for Reconsideration and to Correct Error under Fed. R. Crim. 35 ([Filing No. 29](#)) is **DENIED**. Because the presentence investigation report is confidential, the clerk is directed to restrict ([Filing No. 29-3](#)) to case participants only.

**SO ORDERED.**

Date: 10/10/2018

_TANYA WALTON PRATT, JUDGE_
United States District Court
Southern District of Indiana

DISTRIBUTION:

John F. Kautzman
RUCKELSHAUS, KAUTZMAN, BLACKWELL,
 BEMIS & HASBROOK
jfk@rucklaw.com

Martin A. Brown
RUCKELSHAUS, KAUTZMAN, BLACKWELL,
 BEMIS & HASBROOK
mab@rucklaw.com

Anita T. Channapati
U.S. DEPARTMENT OF JUSTICE
CIVIL RIGHTS DIVISION
anita.channapati@usdoj.gov